## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**CELLULAR SOUTH, INC.**                                        **PLAINTIFF**

**VS.**                                        CIVIL ACTION NO. 3:08cv201 WHB2RA

**MISSISSIPPI PUBLIC SERVICE COMMISSION;**
**LEONARD BENTZ, In His Official Capacity**
**as Chairman of the Mississippi Public Service**
**Commission; LYNN POSEY, In His Official**
**Capacity as Vice Chairman of the**
**Mississippi Public Service Commission; and**
**BRANDON PRESLEY, In His Official Capacity as**
**Commissioner of the Mississippi Public Service**
**Commission**



**and**

**BAY SPRINGS TELEPHONE COMPANY, INC.;**
**BRUCE TELEPHONE COMPANY, INC.;**
**DECATUR TELEPHONE COMPANY;**
**FULTON TELEPHONE COMPANY, INC.;**
**GEORGETOWN TELEPHONE COMPANY, INC.;**
**MOUND BAYOU TELEPHONE CORPORATION d/b/a FAIL, INC.;**
**BPM, INC. D/B/A NOXAPATER TELEPHONE COMPANY;**
**SMITHVILLE TELEPHONE COMPANY, INC.;**
**SLEDGE TELEPHONE COMPANY;**
**LAKESIDE TELEPHONE COMPANY, INC.;**
**CALHOUN CITY TELEPHONE COMPANY, INC. d/b/a TDS TELECOM;**
**MYRTLE TELEPHONE COMPANY, INC. d/b/a TDS TELECOM;**
**SOUTHEAST MISSISSIPPI TELEPHONE COMPANY, INC. d/b/a TDS TELECOM;**
**and WINDSTREAM MISSISSIPPI**
**(formerly ALLTEL MISSISSIPPI, INC.)**                **DEFENDANTS**

### COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF AND PETITION FOR JUDICIAL REVIEW OF MISSISSIPPI PUBLIC SERVICE COMMISSION DECISION PURSUANT TO 47 U.S.C. § 252(e)(6)

Cellular South, Inc. ("Cellular South") files this action pursuant to the

Telecommunications Act of 1996 ("Act") seeking declaratory, injunctive and other relief and

judicial review of portions of an interconnection agreement between it and the rural incumbent

local exchange carriers of Mississippi named herein ("RLECs"), which the Mississippi Public Service Commission ("Commission") approved by virtue of its failure to act pursuant to Section 252(e)(4) of the Act. In support of its claims for relief, Cellular South states as follows:

## PARTIES

1.      Plaintiff Cellular South is a corporation organized under the laws of the State of Mississippi with its principal place of business in Ridgeland, Madison County, Mississippi. Cellular South is a Commercial Mobile Radio Service ("CMRS") provider, frequently referred to as a "wireless carrier." Cellular South provides telecommunications services within the state of Mississippi, and is a telecommunications carrier within the meaning of the Act.

2.      Defendant Commission is an agency of the State of Mississippi, located at 501 N. West Street, Jackson, Mississippi 39201. The Commission is a "State Commission" within the meaning of the federal Telecommunications Act of 1996. The Commission may be served with process by delivering a copy of the Summons and this Complaint to Brian U. Ray, Executive Secretary, Mississippi Public Service Commission, 2nd Floor, Woolfolk Building, Jackson, Mississippi 39201.

3.      Defendant Leonard Bentz is Chairman of the Commission. He is sued in his official capacity as Chairman and Commissioner for declaratory and injunctive relief only. As a Commissioner, Defendant Bentz conducts official Commission business in, or resides in, Jackson, Mississippi, the official location of the Commission. He may be served with process by delivering a copy of the Summons and this Complaint to Brian U. Ray, Executive Secretary, Mississippi Public Service Commission, 2nd Floor, Woolfolk Building, Jackson, Mississippi 39201.

4.      Defendant Lynn Posey is Vice-Chairman of the Commission.  He is sued in his official capacity as Vice-Chairman and Commissioner for declaratory and injunctive relief only. As a Commissioner, Defendant Posey conducts official Commission business in, or resides in, Jackson, Mississippi, the official location of the Commission.  He may be served with process by delivering a copy of the Summons and this Complaint to Brian U. Ray, Executive Secretary, Mississippi Public Service Commission, 2nd Floor, Woolfolk Building, Jackson, Mississippi 39201.

5.      Defendant Brandon Presley is a Commissioner.  He is sued in his official capacity as Commissioner for declaratory and injunctive relief only.  As a Commissioner, Defendant Presley conducts official Commission business in, or resides in, Jackson, Mississippi, the official location of the Commission.  He may be served with process by delivering a copy of the Summons and this Complaint to Brian U. Ray, Executive Secretary, Mississippi Public Service Commission, 2nd Floor, Woolfolk Building, Jackson, Mississippi 39201.

6.      Defendant Bay Springs Telephone Company, Inc. is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, D. Wayne Skelton, 236 East Capitol Street, 4th Floor, Jackson, Mississippi  39201.

7.      Defendant Bruce Telephone Company is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Connie W. Collins, 101 Public Square, Bruce, Mississippi 38915.

8.     Defendant Decatur Telephone Company is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, W.D. Bailey, 149 Seventh Street, Decatur, Mississippi 39327.

9.     Defendant Fulton Telephone Company, Inc. is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Donna F. Alexander, 12 Third Street, Bay Springs, Mississippi 39422.

10.     Defendant Georgetown Telephone Company, Inc. is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Olene B. Miller, East Railroad Avenue, Georgetown, Mississippi 39078.

11.     Defendant Mound Bayou Telephone Corporation, doing business as Fail, Inc., is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Donna F. Alexander, 12 Third Street, Bay Springs, Mississippi 39422.

12.     Defendant BPM, Inc., doing business as Noxapater Telephone Company, is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, John Pearce, 851 CR 1519, Bay Springs, Mississippi 39422.

13.     Defendant Smithville Telephone Company, Inc. is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Roger V. Thompson, 63470 Highway 25 North, Smithville, Mississippi 38870.

14.     Defendant Sledge Telephone Company is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Lisa B. Sledge, 123 Delta Avenue, Sunflower, Mississippi 38778.

15.     Defendant Lakeside Telephone Company, Inc. is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Lisa B. Sledge, 123 Delta Avenue, Sunflower, Mississippi 38778.

16.     Calhoun City Telephone Company, Inc., doing business as TDS Telecom, is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Corporation Service Company, 506 South President Street, Jackson, Mississippi 39201.

17.     Myrtle Telephone Company, Inc., doing business as TDS Telecom, is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Corporation Service Company, 506 South President Street, Jackson, Mississippi 39201.

18.     Southeast Mississippi Telephone Company, Inc., doing business as TDS Telecom, is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Corporation Service Company, 506 South President Street, Jackson, Mississippi 39201.

19.     Windstream Mississippi, formerly Alltel Mississippi, Inc., is a corporation organized under the laws of Mississippi.  It may be served with process by delivering a copy of

the Summons and this Complaint to its registered agent, C T Corporation System, 645 Lakeland East Drive, Ste 101, Flowood, Mississippi 39232.

## JURISDICTION AND VENUE

20.     The Court has jurisdiction over this matter pursuant to § 28 U.S.C. §§ 1331 and 2201 and 47 U.S.C. § 252(e)(6).

21.     Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c).  This Court is an "appropriate Federal district court" under 47 U.S.C. § 252(e)(6).

## PROCEDURAL HISTORY AND BACKGROUND

22.     The Act provides a comprehensive scheme designed to "promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." Pub.L. No. 104-104, 110 Stat. 56 (1996).  The Act places certain duties upon telecommunications carriers to establish the mechanisms necessary to accomplish such purposes.

23.     Foremost among these duties is the duty of all telecommunications carriers "to interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers."  47 U.S.C. § 251(a).  Interconnection ensures that customers who subscribe to one telecommunications carrier's telecommunications service  can receive calls from, and place calls to, those customers who subscribe to the telecommunications services of another telecommunications carrier.  The interconnection here in issue is between each of the respective RLECs and Cellular South.

24.     In addition to the general duty of all telecommunications carriers to interconnect their facilities and equipment  directly or indirectly as set forth in Section 251(a) of the Act, Sections 251(b) and (c) of the Act place additional obligations on incumbent local exchange

carriers ("ILECs") regarding interconnection.  (As noted above the RLECs are incumbent local exchange carriers.)   Among these is the obligation to "establish reciprocal compensation arrangements for the transport and termination of telecommunications."   47 U.S.C. § 251(b)(5). Reciprocal compensation arrangements require the interconnecting carrier on whose network a call originates to pay a charge based on a per-minute rate to the carrier on whose network the call is terminated.

25.     The Act also charges ILECs with the duty to provide dialing parity, which "means that a person who is not an affiliate of a local exchange carrier is able to provide telecommunications services in such a manner that customers have the ability to route automatically, without the use of any access code, their telecommunications to the telecommunications services provider of the customer's designation from among two or more telecommunications services providers (including such local exchange carrier)."  47 U.S.C. §§ 251(b)(5), 153(a)(39).  Dialing parity in this instance would mean that RLECs would have to treat calls from their respective customers to Cellular South customers as "local" and not cause the RLEC's customers to dial "1+" and incur long distance charges for such calls.

26.     The terms under which carriers interconnect are contained in interconnection agreements.  The Act requires telecommunications carriers to negotiate in good faith to reach such agreements; however, if an agreement cannot be reached, the Act directs the parties to submit to arbitration before the appropriate state commission.  47 U.S.C. § 252(b).

27.     Regardless of the manner in which the terms of an interconnection agreement are reached, an interconnection agreement is not final until approved by the governing state commission. 47 U.S.C. § 252(e).  A party aggrieved by the state commission's decision regarding an interconnection agreement may bring an action in federal district court pursuant to Section

252(e)(6) of the Act, in order to determine whether an interconnection agreement meets the requirements of Sections 251 and 252 of the Act.

28.    Cellular South and the RLECs agreed that Cellular South requested negotiation of an interconnection agreement with each RLEC on March 9, 2006.  Section 251(b)(1) of the Act provides that from the 135th to the 160th day after an incumbent local exchange carrier receives a request for negotiation of an interconnection agreement, then the carrier or any other party to the negotiation may petition the State commission to arbitrate any open issues.  In this instance, the 135th day and start of the arbitration "window" under the Act was July 21, 2006 and the 160th day or close of the arbitration window under the Act was August 15, 2006.

29.    On August 10, 2006, the RLECS filed before the Commission a Petition for Arbitration Under the Telecommunications Act With Cellular South, Inc. ("Petition"), establishing Docket No. 2006-AD-430.  The Petition is attached hereto as Exhibit A.  The Petition was timely filed pursuant to Section 252(b) of the Act, after negotiations between the parties failed to result in mutually agreeable terms and conditions with respect to the provisions of their interconnection agreement.

30.    On September 5, 2006, Cellular South filed its response to the Petition in accordance with Section 252(b)(3) of the Act.  The parties then submitted a Joint Issues Matrix, setting forth fourteen issues and sub-issues for resolution, conducted discovery and pre-filed direct and rebuttal testimony.  The arbitration panel conducted a hearing[1] on February 14 and 15, 2007.  The parties then submitted initial and reply briefs and proposed orders in July and September, 2007, respectively.  In addition to such briefs, the parties filed a jointly revised

---

[1] The RLECs simultaneously filed before the Commission a Petition for Arbitration Under the Telecommunications Act with Cingular Wireless LLC ("Cingular Petition"), establishing Docket No. 2006-AD-431.  The two arbitrations were consolidated for purposes of hearing.  The issues in the two arbitrations, with one exception not in issue here, were identical.

"Issues Matrix and Status of Issues," indicating that the Parties had resolved several issues, and eleven issues and sub-issues remained for determination of the arbitration panel. The only issues relevant for this appeal, however, are 1) the proper determination of a reciprocal compensation rate consistent with the requirements of Section 252(d)(2) of the Act, and 2) the implementation of the Act's rules regarding dialing parity for RLEC-originated calls to Cellular South customers.

31.     On October 10, 2007, the arbitration panel entered an Arbitration Order, a copy of which is attached as Exhibit B ("Arbitration Order") finding, in parts relevant to this action, the following: 1) that the RLECs are not subject to the FCC's TELRIC pricing rules and that each RLEC is not required to establish a transport and termination rate that does not exceed its forward-looking economic cost; 2) that the reciprocal compensation rate in the reciprocal compensation agreements between each RLEC and Cellular South shall be 1.7 cents per minute; and 3) that RLECs shall not be obligated to provide dialing parity to RLEC customers who call Cellular South customers.

32.     The Arbitration Order directed the parties to file an Interconnection Agreement incorporating the decisions reached in the Arbitration Order.  The parties thus filed an Interconnection Agreement, which was consistent with the arbitration panel's decisions as set forth in the Arbitration Order. On January 29, 2008 the arbitration panel entered a Supplemental Arbitration Order, approving the correction of a phrase on the proposed Interconnection Agreement submitted by the parties ("Supplemental Arbitration Order").  The Supplemental Arbitration Order and attached Interconnection Agreement as modified and which is this subject of this action ("ICA") is attached hereto as Exhibit C.

33.     Pursuant to the Commission's Rules for conducting Section 252 Arbitrations,[2] Cellular South filed a set of objections before the Commission on February 5, 2008, urging the Commission to modify the conforming agreements as to the dialing parity and reciprocal compensation holdings discussed above.  As of the date of this filing, Commission has taken no action on those objections.

34.     No action was taken by the Commission on the ICA as of the date of this filing. Pursuant to Section 252(e)(4) of the Act, the failure by the Commission to approve or reject an interconnection agreement within "30 days after submission by the parties of an agreement adopted by arbitration" shall cause the agreement to be deemed "approved" by the Commission. As of the date of this filing, thirty days have elapsed since the entry of the Supplemental Arbitration Order approving the modified Interconnection Agreement between the parties, thus rendering the ICA "approved" by the Commission as provided in Section 252(e)(6) of the Act. Accordingly, this action is properly filed pursuant to Section 252(e)(6) of the Act.

## STATEMENT OF THE CASE

35.     Cellular South's first assignment of error relates to the Commission's determination of the following issue, delineated as "Issue 8B" in the arbitration:

> Issue 8B:  Is each RLEC required to establish a transport and termination rate that does not exceed its forward-looking economic costs (TELRIC plus an allocation of forward-looking common costs) based on a cost study that complies with the requirements of 47 CFR §§ 51.505 and 51.511, and which must be filed in this proceeding and produced for the Arbitrators and CMRS Providers?

The Commission approved the following conclusion by the arbitration panel:

> "[T]he CMRS providers have not addressed the plain meaning of the words in the quotation that address Section 251(f)(1) and clearly state "that certain small incumbent LECs are not subject to our rules under section 251(f)(1) of the 1996 Act, unless otherwise determined by a state commission." . . . The plain words of

---

[2] Rule X at page 23, MPSC Docket No. 95-UA-358, Subdocket: Section 252 Procedures, adopted by Order dated August 23, 1996.

the FCC indicate that the FCC did not apply its TELRIC rules to the rural telephone companies subject to Section 251(f)(1) of TA 96."

Arbitration Order at 26-27.

36.    In addition to serving as part of the underlying basis for the Commission's legally incorrect method of determining the reciprocal compensation rate in the ICA, this conclusion is embodied in the ICA in the following clause:

"WHEREAS, ILEC represents that it is a rural telephone company (as defined in 47 U.S.C. § 153) and the Parties agree that by voluntarily entering into this Agreement ILEC is not waiving any rights it may have pursuant to 47 U.S.C. § 251(f) of the Act and both the existing exemption and the effective suspension ordered pursuant to that Section; and . . ."

ICA at 1.

37.    The portions of the ICA that incorporate the language above and the adoption of a reciprocal compensation rate of 1.7 cents per minute violate the Act.  The RLECs are not automatically exempt from TELRIC by means of Section 251(f)(1).  The exemption granted by Section 251(f)(1) applies only to the obligations contained in Section 251(c) of the Act.  Those obligations do not include the Section 251(b)(5) requirement to enter into reciprocal compensation arrangements, or the Section 252(d)(2) pricing standards that apply to Section 251(b)(5) agreements.

38.    Finally, with regard to Cellular South's first assignment of error, the Commission also approved the arbitration panel's finding that an Order entered by the Commission in the docket styled In re: Petition of the Mississippi Independent Group for Action by the Commission Pursuant to Section 253(b) of the Telecommunications Act of 1996, Docket No. 96-UA-298, dated December 31, 1996 (hereinafter, "Suspension Order") relieved the RLECs of any obligation to establish transport and termination rates pursuant to TELRIC.  However, this finding is contrary to the language of the Suspension Order.  Additionally the RLECs conceded

11

in their post-hearing brief that they are not relying upon the Suspension Order to claim exemption from TELRIC. The RLECs' concession that they are not relying upon the Suspension Order for such purposes also rendered moot a dispute between the parties as to whether the RLECs had waived any arguments that the Suspension Order provided an exemption for the RLECs from TELRIC in a previous agreement between the parties. The RLECs' concession in this regard further rendered moot the issues delineated as Issue 6 and Issue 7 in the arbitration. Therefore, the arbitration panel should not have based its decision that TELRIC does not apply upon either of these arguments.

39.     Cellular South's second assignment of error relates to the Commission's determination of the following issues, delineated in the arbitration as "Issue 8C" and "Issue 8," respectively:

> Issue 8C:  If the RLECs fail to demonstrate costs that meet the requirements of the Telecommunications Act and FCC rules, how should transport and termination costs be established for each RLEC?
>
> Issue 8:  What should be the rate used in the Agreement for transport and termination?

40.     With regard to these issues the Commission approved the following conclusions by the arbitration panel:

> On the basis of the best information on the record before us, we conclude that the 1.7 cent rate is 'a reasonable approximation of the additional costs of terminating' traffic subject to Section 251(b)(5). Consistent with applicable statutory criteria, the 1.7 cent rate can be established without any need to engage in 'any rate regulation proceeding to establish with particularity the additional cost of transport or terminating calls.' Accordingly, we resolve Issue 8 and 8C by establishing 1.7 cents per minute as the reciprocal compensation rate in the reciprocal compensation agreements between each RLEC and each CMRS provider.

Arbitration Order at 31.

41.     Consistent with the arbitration panel's conclusions as to Issues 8C and 8, the ICA contains the following language:

APPENDIX A
Rates and Billing Procedures

**1.     IntraMTA Traffic.**  The Parties shall compensate each other for the Transport and Termination of IntraMTA Traffic originated by one Party and terminated to the other Party at the following rate:  $0.017/MOU.

ICA, Appendix A.

42.     Despite ruling that the RLECs are not required to follow TELRIC to determine their transport and termination rates, the Arbitration Order also expressly holds that the transport and termination rates must be "consistent with the requirements of Section 252(d)(2) of TA96." Under federal law, the only options for establishing transport and termination rates consistent with Section 252(d)(2) are (1) rates based on a TELRIC study, (2) bill-and-keep, or (3) FCC proxy rates.  Additionally, Section 252(d)(2) requires that reciprocal compensation rates must be determined "on the basis of a reasonable approximation of the additional costs of terminating such calls."  Thus, the Commission's attempt to comply with Section 252(d)(2) by adopting into the ICA a previously negotiated rate contained in other RLEC interconnection agreements violates the Act, as does the decision to adopt a "blanket rate" applicable to each RLEC, despite record evidence demonstrating that the RLECs have widely divergent costs.

43.     Cellular South's third assignment of error is that even if the Commission were not in violation the Act for its refusal to base the reciprocal compensation rate on a TELRIC study, it nevertheless acted in an arbitrary and capricious manner by adopting into the ICA a reciprocal compensation rate of 1.7 cents per minute for all RLECs without sufficient record evidence to support such a rate.  Moreover it was also arbitrary and capricious for the Commission to adopt a

13

"blanket rate" applicable to each RLEC, in spite of record evidence demonstrating that the RLECs have widely divergent costs.

44.     Cellular South's fourth assignment of error stems from the Commission's approval of the arbitration panel's conclusion with regard to dialing parity, delineated in the arbitration as Issue 13, as follows:

> In the case of both direct and indirect interconnection, must an RLEC allow its customers to dial as local, without the imposition of a toll charge, calls to numbers assigned to the CMRS Providers' customers that would be dialed as local by the RLECs' customers if the numbers were assigned to the customers of another landline carrier?

45.     The Commission approved the following conclusion by the arbitration panel regarding dialing parity:

> "The CMRS arguments concerning 'dialing parity' all clearly beg the question of when and under what circumstances the telephone numbers assigned to CMRS providers properly may be considered part of the RLECs' local calling scope."

> "[T]he FCC's express allowance in *TSR Wireless* of 'wide area calling' arrangements, wholly outside of interconnection terms and conditions, contradicts the notion that CMRS numbers are automatically included in an RLEC's local calling scope."

> "The fact that they [the CMRS Providers] have chosen not to complain to the FCC undermines the credibility of their claim as to ostensibly 'clear' meaning and application of 'dialing parity,' and supports the RLECs' argument that the CMRS providers in fact are distorting the meaning of dialing parity for purposes of their arguments here."

Arbitration Order at 38-39.

46.     Consistent with the arbitration panel's conclusions as to Issue 13, the ICA does not contain a provision requiring the RLECs to provide dialing parity.

47.     The Arbitration Order and, consequently, the ICA misconstrue FCC and federal court decisions requiring the RLECs' duty to provide dialing parity to the CMRS Providers. Under federal law, landline carriers are required to allow their customers to dial numbers

14

assigned to wireless customers, without the requirement to pay a toll charge or to dial additional digits, if RLEC customers would not pay a toll charge or dial extra digits were the numbers assigned to another landline carrier.  This requirement does not unfairly burden landline carriers, because any cost of completing the call beyond the landline carrier's local calling scope (with the exception of a transit charge in cases of indirect interconnection) is born exclusively by the wireless carrier.

48.     Consistent with federal law, the ICA should contain the following clause, to be inserted as new Section 4.1.2.3:

> [RLEC] will allow its customers to dial as local, without the imposition of a toll charge, calls to numbers assigned to CMRS Carrier's customers that would be dialed as local by [RLEC's] customers if the numbers were assigned to the customers of another landline carrier.

49.     Because Cellular South generally delivers more calls from its customers to each of the RLECs than it receives from each RLEC, Cellular South typically pays each of the RLECs more in compensation for transport and termination than it receives.  Thus, if permitted to stand, the provision of the ICA establishing a reciprocal compensation rate will cause Cellular South to incur monetary liability to each of the ILECs for the transport and termination of telecommunications traffic in excess of what is required by federal law.

50.     If the RLECs are not required to provide dialing parity, then Cellular South will suffer in its ability to compete with other providers of telecommunications services, because RLEC customers will not want to incur the toll charges currently associated with calling Cellular South customers.  Because it would be virtually impossible for Cellular South to determine the number of potential customers who would not subscribe to Cellular South because of lack of dialing parity, Cellular South would suffer immediate and irreparable harm for which damages would not be quantifiable.  Such harm to Cellular South would outweigh any harm that the

RLECs would suffer as a result of being required to provide dialing parity.  Finally, the public interest would not be impaired by a requirement that the RLECs must provide dialing parity, because dialing parity would make it less expensive and easier for the RLECs' customers to call Cellular South customers.

### COUNT I

51.     The ICA violates the Act because it establishes reciprocal compensation rates without reference to TELRIC and/or without reference to the respective RLECs' forward looking economic cost of providing termination.

### COUNT II

52.     The Commission's attempt to comply with Section 252(d)(2) by adopting into the ICA a previously negotiated rate contained in other RLEC interconnection agreements violates the Act, as does the decision to adopt a "blanket rate" applicable to each RLEC.

### COUNT III

53.     Additionally and alternatively, the Commission's adoption of a blanket reciprocal compensation rate of 1.7 cents per minute for all RLECs based upon a determination that such rate is a "reasonable approximation of the additional costs of terminating such calls" is arbitrary and capricious and therefore erroneous.

### COUNT IV

54.     The ICA violates the Act, because it does not require the RLECs to provide dialing parity for its customers to call the customers of Cellular South.

## PRAYER FOR RELIEF

WHEREFORE, Cellular South respectfully requests the Court grant it the following relief:

A)      Declare the ICA is in violation of the Act for the following reasons:  (1)  The reciprocal compensation rate of 1.7 cents per minute is in violation of the Act; and 2) The failure to require RLECs to provide dialing parity on RLEC-originated calls to Cellular South customers is contrary to federal law;

B)      Additionally and alternatively, declare that the Commission acted in an arbitrary and capricious manner when it held that the reciprocal compensation rate should be 1.7 cents per minutes for all of the respective RLECs;

C)      Reverse and remand the Arbitration Order and Supplemental Arbitration Order to the Commission with directions to:  (1) adopt the reciprocal compensation rate for each RLEC, which has been determined by application of TELRIC standards and which is contained in the arbitration record; (2) order the RLECs to provide dialing parity in accordance with the Act; and (3) reform the ICA as necessary to reflect such directions;

D)      Direct and Order the Commission to direct and order the parties to reverse and undo all compensation paid or exchanged between them pursuant to the ICAs prior to such reformation and to settle all charges for such period using the reciprocal compensation rates adopted in this proceeding;

E)      Enjoin all defendants from seeking to enforce the unlawful decisions and the relevant portions of the ICA against Cellular South; and

F)      Award Cellular South such other and further relief as the Court deems necessary.

17

Respectfully submitted this the 28th day of March, 2008.

CELLULAR SOUTH, INC.

By: _Charles L. McBride, Jr._

Charles L. McBride, Jr.,
One of Its Attorneys

OF COUNSEL:

Charles L. McBride, Jr., MSB # 8995
W. Ken Rogers, MSB # 99230
Katie L. Wallace, MSB # 101919
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
248 East Capitol Street, Suite 1400
P. O. Drawer 119
Jackson, MS  39205
Telephone: 601-948-3101
Facsimile:  601-960-6902